Judge Ewing
delivered the Opinion of the Court.
On the 17th of July, 1827, Hewitt and Felix entered into an article of agreement, by which it was stipulated that Felix had assigned to Hewitt his contract with Blackford, for two acres of ground near to Hewitt’s residence; and Hewitt had sold his house and lot near the cotton factory to Felix, for the sum of five hundred dollars, to be paid in four equal annual instalments—a general warranty deed, for which, to be made upon the payment of the last instalment. “ Hewitt also sells to “said Felix, two acres of land belonging to William *163 “ Shrieve, adjoining the cotton-factory &c. The fence “ which now stands near the base line, Felix binds “ himself to place on his parallel line, to said base line. “ Felix executes his note, for one hundred dollars, “ payable to said Shrieve, on the first day of October, 1823, “ for the two acres, and upon the payment of which, “ Hewitt will cause a general warranty deed to be made “ by Shrieve to Felix.”
On the 8th of July, 1828, Felix, for a valuable-consideration, assigned to Berryman, that part of the agreement for the two acres of ground; and in December next after the note became due, Berryman tendered to Hewitt and Shrieve, the one hundred dollars, with interest, the consideration for the two acres of ground, who refused to receive it, or make a title, unless he or Felix would also pay the amount that had fallen due on the contract for the house and lot.
Shrieve and wife, afterwards, on the first day of January, 1829, conveyed the two acres of ground and improvements thereon to Hanley, for the consideration of two hundred and sixty dollars. And about the same time, Jameson paid and secured to Hewitt, the consideration for the house and lot, and received a deed from him for the same,—he having previously contracted with Felix to take that portion of the contract with Hewitt off his hands.
Berryman filed his bill against Hewitt, Shrieve, Felix and Hanley, setting forth the aforesaid facts, and also alleging, that Felix had, immediately after his purchase, at great costs, erected a rope-walk and other improvements on the two acres of ground, and Hanley had purchased with notice &c. He prayed for a specific execution of the contract, if to be had; if not, compensation for the improvements.
Hewitt answered, controverting the complainant’s right to relief upon the ground of Felix’s failure and inability to comply with the terms of the contract with respect to the house and lot, and his failure to remove the fence &c.
Shrieve answered admitting his acquiescence in, and sanction of the contract made by Hewitt, and his con *164 veyance to Hanley, by the wish of Hewitt; and to enable him to get the money then due him from Felix.
The Circuit Court first dismissed the complainant’s bill, and he appealed to this Court, and that decree was reversed, and the cause remanded, with instructions to the Circuit Court, in substance, to ascertain the value of the improvements made on the two acres by Felix, and to allow Berryman the amount thereof, deducting therefrom the value of the use of the ground, and of waste, if any had been committed; the decree to be rendered against Shrieve and Hewitt jointly. In 6 J. J. Marshall, 462, the case is reported.
Upon a return of the cause to the Circuit Court, a commissioner was appointed, to assess the value of the improvements, rents, and waste, if any, and upon his report, a decree was rendered, that Shrieve and Hewitt pay to the complainant the sum of one hundred and ninety-two dollars, the value of the improvements over the rents, and costs; and dimissed the bill as to the other defendants. From this decree, Shrieve and Hewitt have appealed to this Court.
The Circuit Court has, in the decree rendered, substantially pursued the mandate of this Court; notwithstanding which, the counsel for the appellants, with apparent earnestness, strenuously contends, that relief should not have been granted to the complainants:—First—on the ground that Felix had not performed all the prior stipulations of the contract on his part, and at law could not recover, and much less in chancery.
Second. That the contract cannot be separated into parcels, and each enforced in separate suits.
Third. That the improvements and rents should not have been assessed by a commissioner, but by a jury.
If it were conceded, that it would be proper for this Court, upon the return of the cause, by an appeal from the Circuit Court, to reverse and change its former decision, we perceive nothing in it, which does not, in substance, meet our approbation.
But as the above points have been made and strenuously pressed by an ingenious argument, on the consid *165 eration of the Court, it will not be amiss, in response to the points made, to present some additional views, to those contained in the former opinion.
Whether covevants are dependent, or independent, is to be determined by ascertaining the intention of the parties as to the time of performance.
The same contract and writing may contain divers stipulations for the performance of as many acts by each party, provided some one or more acts are done previously or simultaneously by the other party; and in such case, the obligation to perform any one of the stipulations, separately, will depend upon the performance of the conditions relating to that particular act, and will not require the performance of all the stipulations which the covenantee is bound, by the same writing, to perform before or at that time.
The dependence or independence of covenants is to be collected from the evident sense and meaning of the parties, and however transposed they may be, in an article, their precedency must depend on the order of time in which the intent of the transaction requires their performance. That cannot be construed to be a precedent condition, which the parties, by the clear and intelligible terms of their contract, have made otherwise. Nor can that covenant which is made by the agreement of the parties to depend for its performance alone, upon a single precedent condition, be made by construction, to depend upon other conditions, though in the same contract, which are to be performed at a different time and for a different consideration.
Though the contract between Hewitt and Felix, is one and entire, it contains several distinct and independent covenants, on the part of each of the contracting parties, which are not made to depend upon the performance of the whole of the covenants in the entire contract, on the other side.
For instance, Hewitt covenanted to cause a general warranty deed, for the two acres of ground, to be made to Felix, upon the payment of the one hundred dollars, which was to be paid on the first of October, 1828. Had an action of covenant been brought by Felix against Hewitt, for the breach of this stipulation in the covenant only, it surely would not be contended that, to entitle him to recover, it would have been necessary to aver, that Felix had paid the instalments for the house and lot, some of which fell due long after the time fixed for the conveyance of the two acres of ground, and which was no part of the consideration for the same. If so, the parties, by the express terms of their contract, have fixed the time for the conveyance, and made it to depend upon one condition, and the law, by construction, fixes another time, and makes it depend upon other conditions to be performed at a different time.
Again: it cannot be doubted, that though the contract *166 is one and entire, that an action of covenant may be maintained for the breach of each independent covenant, as the same may be broken.
In Eq. when a party seeks to enforce the specific execution of a contract, and shows a peformance on his part, of the conditions on which it depended—yet, if it appears that that contract was but one, among others, of various stipulations in one entire agreement, the defendant may resist the claim, upon the ground of the nonperformance by the comp’t of other distinct covenants constituting parts of the same agreement. In such case, the Chancellor will refuse to aid the complainant, but leave him to such legal remedy as he may have—And the assignee of a covenant, in such case, would be in no better condition than the covenantee himself.
A purchaser of land fails in his execution—the vendor having disaffirmed contract, because of the purchaser’s failure to comply with certain conditions in the agreement, for the sake of which the defendant was induced to make it: the purchaser is entitled to pay for the valuable and lasting improvements he has made upon the land, in the honest belief that it was his own; and, after the amount of rents is deducted from the value of the improvements he (or his vendee in his place) may have a decree for the balance, on a prayer in the bill for such relief, as an alternative.
*166 But though these propositions are undeniably true at law, they may be made to stand upon different grounds in a court of chancery.
In a proceeding, to enforce a specific execution of the contract, Hewitt might successfully resist the equity of Felix, or his assignee, relying upon the entirety of the contract, and his inducement to enter into it as a whole, and the total failure and inability of Felix, to perform other parts of it, which were the most advantageous to Hewitt.
A court of equity would not, in the exercise of its sound discretion, enforce a contract specifically, except it be fair, reasonable and mutual; nor unless the complainant has manifested a readiness, willingness and ability, to do all on his part which equal justice and fair dealing demands. It would not aid a complainant in the enforcement of distinct parts of a contract, selected by himself, because advantageous to him, to the exclusion of other parts of the same contract, which might be most advantageous to the defendant, and have been the chief inducement, with him, for entering into the entire arrangement, though the article might be so drawn, as to enable the complainant to maintain a distinct action at law. The Chancellor will often refuse his aid, leaving the party to his remedy at law for redress. And matters which would form no bar to an action at law, might be set up and relied on successfully as an equitable rebutter to relief in chancery. Nor will an assignee of an independent part of the contract, stand in a better condition than his assignor.
But though the Chancellor might refuse his aid to enforce the contract, unless it was carried into execution throughout, yet when the contract has been disaffirmed by the defendant, and the property sold to another, he will not refuse his aid in compelling him to pay for all lasting and valuable improvements—deducting rents. And this is the only relief which has been granted in this case.
A ch’r may refer enquiries of value to a commissioner, or to a jury, at his discretion.
The improvements were made bona fide by Felix, under the honest conviction, founded on the faith of the contract, that the ground was his own. Those improvements have added to its value, and Shrieve and Hewitt have been enabled to sell the lot, at an enhanced price, in consequence of the improvements. Because Felix has been unable promptly to pay the instalments for the house and lot, or has failed to remove a fence, shall he or his assignee, not only be deprived of the land, but also of his labor? We think not: especially when that labor has added to the value of the ground retained by Hewitt and Shrieve. No one should be enriched by the labor of another. And while a court of equity may refuse its aid to enforce the contract specifically, it will not impose so severe a penalty on Felix as to take from him his labor, and bestow it upon his adversaries. It would be unconscientious in them to enjoy it. Suppose Felix had placed upon the lot a steam mill worth five thousand dollars, would it be equitable, because of the failure of Felix a few months, to make payment of the instalments for the house and lot, to permit Hewitt and Shrieve to sell the lot and steam-mill, pocket the proceeds, and make no compensation to Felix or his assignee? Such a case would be so glaringly unjust as to strike every person at first blush. The amount or value of the improvements cannot render it less inequitable.
But in this case, Hewitt cannot have been essentially injured, by the failure of Felix to make prompt payment. He not only made sale of the lot, but he, by the permission of Felix, also sold the house and lot to Jameson, and received and secured the payment of the precise sum, which Felix was to give him for them.
We are also satisfied, that the Circuit Court did not err, in committing the assessment of the rents, improvements &c. to a commissioner, rather than to a jury.
It is competent for the Chancellor to adopt either mode. He may select his own agents to make the assessment, subject to his supervision and control; or direct an issue to be made up, and submitted to a jury to make the assessment.
No objection was made to the commissioner’s report *168 in the Circuit Court, and we perceive no error in it, to the prejudice of the appellants.
It is, therefore, the opinion of the Court that the decree of the Circuit Court be affirmed.